UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TANYA DISTEFANO, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 25-cv-40040-MRG |
| DETECTIVE CHRISTOPHER CORNELIUS and TOWN OF CLINTON, | ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS [ECF No. 18]**

**GUZMAN, J.**

*Pro se* Plaintiff, Tanya Distefano, filed this lawsuit alleging state and federal claims against Defendant-Detective Christopher Cornelius and his municipal employer, arising out of the investigation conducted by Defendants in Plaintiff's ongoing custody dispute regarding her minor son, R.C. Specifically, Plaintiff alleges Detective Christopher Cornelius ("Detective Cornelius") of the Clinton Police Department ("CPD") improperly favored R.C.'s father in the child's custody dispute and, further, that Cornelius failed to properly investigate Plaintiff's allegations that R.C. had been the victim of physical and sexual abuse committed by his father. Defendants jointly filed a motion to dismiss the original complaint pursuant to Fed. R. Civ. P. 12(b)(6). Following Plaintiff amending her complaint, Defendants renewed their motion to dismiss, [ECF No. 18], which is currently before the Court. For the reasons stated below, Defendants' motion is **GRANTED**.

**I.    BACKGROUND**

The following relevant facts are taken primarily from the allegations in Plaintiffs' Amended Complaint, [Am. Compl., ECF No. 17], and are accepted as true for purposes of this motion. Ruivo

v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)"). All plausible inferences are made in Plaintiff's favor. Id. The Court notes that the Amended Complaint is difficult to read; however, the Court endeavors to construe Plaintiff's allegations liberally, given her *pro se* status. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*).

### A. **Relevant Facts**

This case primarily arises from a custody dispute between Plaintiff and the father of her son, R.C. In June 2022, Plaintiff held sole custody of R.C. while the father was allowed weekend visitation through a shared custody agreement. [Am. Compl. at 9]. In July 2022, Plaintiff filed a voluntary report to the Massachusetts Department of Children and Families ("DCF"), alleging that the father had physically and sexually abused R.C. during the child's weekend visits.[1] [Id. at 9]. Plaintiff alleges that DCF investigated the allegations and the initial report found that the abuse allegations were "supported." [Id.] DCF then referred the case to the CPD for further criminal investigation. [Id. at 10]. Defendant-Detective Christopher Cornelius directed the law enforcement investigation. [Id.].

Plaintiff alleges that Detective Cornelius "betray[ed his] professional duty" and mishandled the investigation to such an extent that it violated Plaintiff's rights. [Id. at 2]. According to Plaintiff, Detective Cornelius investigated "in an aggressive and biased manner to protect [the father]." [Id. at 10]. Detective Cornelius allegedly mishandled the investigation into

---

[1] Specifically Plaintiff alleges that the father had "beaten [R.C.] with [a] iPad, thr[ew] [R.C.] across the room injuring his back, forced [R.C.] to shower with [him][,] inappropriately touched [R.C.] on [their] front and buttocks . . . punch[ed] holes in walls, [pulled] [R.C.'s] pants [] down and repeatedly spanked [R.C.]." [Am. Compl. at 9].

2

the father's abuse by failing to collect evidence or consult the "DCF master file." [Id.] Plaintiff claims that she personally visited the Clinton Police Department with additional witnesses but was informed that Detective Cornilius had not yet interviewed the father. [Id.] Plaintiff alleges that a Google Drive of evidence given to Detective Cornelius by the father consisted of "curated [] favorable . . . evidence" assembled by the father's then-girlfriend who was "an information technology specialist skilled in extraction and manipulation of digital data, and hacking." [Id.] Additionally, Plaintiff alleges Detective Cornelius ignored "police reports from 2015-2016" of the father's abuse, domestic violence, and solicitation of online sexual content with a minor. [Id. at 14].

Central to Plaintiff's claim is the allegation that Detective Cornelius fabricated facts indicating that Plaintiff was experiencing mental health issues, including a prior suicide attempt, which Plaintiff denies. [Id. at 10–11]. According to Plaintiff, R.C.'s father falsely informed Detective Cornelius that Plaintiff had attempted suicide, when, in reality, it was a former girlfriend of the father who had attempted suicide. [Id.] Plaintiff alleges that Detective Cornelius used the "fact and [] firsthand knowledge" collected in his interview with the father to discredit her as "suicidal[,] . . . coaching the child for custody gain[,] . . . being mentally ill, untrustworthy, and deliberately misleading to effect [P]laintiff's ability to protect [her] child. . . ." [Id. at 11].

As a result of Detective Cornelius's investigation, Plaintiff alleges the original DCF investigation concerning the father was closed and the finding that R.C. was abused by his father was overturned. [Id.] Plaintiff alleges that there were subsequent DCF investigations where she was interviewed and that she gave "emotional" responses due to her pregnancy, which "were weaponized and pathologized by [Detective] Cornelius and DCF as evidence of mental illness." [Id. at 11–12]. The initial DCF investigation was re-ignited by a second mandated reporter. [Id. at

12]. Plaintiff alleges the renewed investigation was then stopped following a conversation with Detective Cornelius, in which he allegedly reiterated that the Plaintiff exhibited "mental instability," used "first hand knowledge of [P]laintiff[']s almost successful suicide," [2] and Plaintiff's apparent coaching of R.C. to gain custody. [Id. at 13].

Following the two unsuccessful DCF reports against the father of R.C., Plaintiff alleges that DCF shifted to investigate her based on false information provided by Detective Cornelius in December 2022. [Id.] Around the same time, Plaintiff alleges that R.C.'s father abused the child again during a weekend visit. [Id. at 14]. Following a visit to Boston Children's Hospital, Plaintiff recounts that R.C. was "diagnosed as [a] victim of sexual assault . . . ." [Id.] Sometime in early 2[0]23,[3] Plaintiff states she made an "in person presentment" to Clinton Town Officials with documentation of the alleged abuse, purported falsified reporting of Detective Cornelius, and documentation to disprove the falsified reports. [Id.] Plaintiff asserts that Town Officials conducted an internal investigation of Detective Cornelius's conduct, where he allegedly stated that he had "no recollection of [P]laintiff or of making such statements." [Id. at 15]. The allegation of Plaintiff's false suicide attempt was then redacted from DCF documentation of the incident, but similar redactions were not made in files held by other agencies in Worcester or the Probate Court. [Id.] The custody dispute over R.C. continued, and at some time unclear from the Amended Complaint, Detective Cornelius testified as a "character witness" on behalf of the father. [Id. at 17]. Ultimately, the Probate Court adjudicating the custody dispute entered a *sua sponte* order on

---

[2] Plaintiff earlier alleged that a suicide attempt was falsely attributed to her. [Am. Compl. at 10]. It is unclear whether this suicide attempt is in reference to the one that Plaintiff was allegedly falsely associated with or is a separate suicide attempt.

[3] The Court notes that in Plaintiff's filings there is a typographical error, where she states that the meeting occurred in "early 2923." [Am. Compl. at 14]. The Court will presume that Plaintiff intended to state that the meeting occurred in 2023.

4

October 10, 2024 removing R.C. from Plaintiff's custody, granting sole custody to the father, and indicating that Plaintiff could regain parenting time with R.C. if she engaged in mental health treatment. [Id. at 22; ECF No. 19-2 (Sua Sponte Temporary Order in Distefano v. Campbell, No. WO16W0441WD, Probate and Family Court, Worcester Division, Oct. 10, 2024)]. To the Court's knowledge, Plaintiff has yet to regain custody of R.C.

### B. Procedural History.

This action was originally filed in Worcester County Superior Court. [ECF No. 1-1]. Defendants removed the action to this Court as the complaint contains multiple claims of constitutional and federal law, over which the Court has original jurisdiction 28 U.S.C. § 1331. [Id. ¶¶ 2–4]. Following the complaint's removal, Defendants filed a Motion to Dismiss for failure to state a claim. [EFC No. 8]. Plaintiff filed a motion to amend her complaint, which the Court granted. [ECF Nos. 11 & 14]. Following the filing of Plaintiffs Amended Complaint, Defendants renewed their Motion to Dismiss for failure to state a claim. [ECF No. 18]. Plaintiff responded and filed a Memorandum in Opposition to Defendants' motion. [ECF No. 20].

## II. LEGAL STANDARDS

Dismissal under Rule 12(b)(6) is appropriate "if, after accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of a plaintiff, the court determines that [the complaint] 'fails to state a claim upon which relief can be granted.'" Doe v. Williston Northampton Sch., 766 F. Supp. 2d 310, 311-12 (D. Mass. 2011) (quoting Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 137 (1st Cir. 2005)); Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual allegations to state a claim to relief that is "both actionable as a matter of law and 'plausible on its face.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). To survive a motion to dismiss, a complaint must set forth "factual

5

allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citation omitted). Further, except in a few limited circumstances, "an adequate complaint must include not only a plausible claim but also a plausible defendant," meaning there must be sufficient factual allegations to establish that a named defendant is plausibly liable for the unlawful acts alleged in the complaint. Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

The Court is mindful of DiStefano's *pro se* status and acknowledges that *pro se* plaintiff's complaints are "held to 'less demanding standards than those drafted by lawyers' and are read liberally on a motion to dismiss." Gonzales v. Harr Toyota Inc., 23-cv-40145-MRG, 2025 WL 764061 *2 (D. Mass. 2025) (quoting Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)). Although *pro se* Plaintiffs are held to a less demanding standard, they still must follow procedural rules, and "dismissal remains appropriate when the court lacks jurisdiction" or "when the complaint fails to even suggest a actionable claim." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (citing Lefebvre v. Comm'r Internal Rev., 830 F.2d 417, 419 (1st Cir. 1987)).

## III.    DISCUSSION

Plaintiff's Amended Complaint brings unnumbered claims pled in bulk fashion against the Defendants, and the Court has endeavored to liberally construe her claims, given her *pro se* status. See Gonzales, 2025 WL 764061, at *2 (quoting Boivin, 225 F.3d at 43). On a liberal reading, Plaintiff asserts the following claims: (1) Fourteenth Amendment violation of substantive due process pursuant to 42 U.S.C. § 1983; (2) First Amendment violation pursuant to 42 U.S.C. § 1983; (3) Fourteenth Amendment Equal Protection violation 42 U.S.C. § 1983; (4) a Monell claim pursuant to 42 U.S.C. § 1983; (5) Negligence/Gross Negligence; and (6) a variety of

intentional tort claims under Massachusetts law. [Am. Compl. at 17–22].[4] This Court is not one to "hide the ball" and in the spirit of being as clear as possible for the Plaintiff, the Court provides the following roadmap for the analysis that follows. In sum, Defendants' motion to dismiss is **GRANTED** in full.

- o Plaintiff's Fourteenth Amendment due process and First Amendment retaliation claims are barred by the Rooker-Feldman doctrine.
- o Plaintiff's Equal Protection claim is barred by Eleventh Amendment immunity.
- o Plaintiff's Monell claim fails because she cannot state a claim for an underlying constitutional violation.
- o With Plaintiff's federal claims dismissed, the Court lacks supplemental jurisdiction to hear her state law claims for negligence and intentional torts.

Key to the Court's reasoning is a determination that Plaintiff has only alleged claims against Detective Cornelius in his official, as opposed to individual, capacity. Plaintiff's original complaint did not specify whether she was bringing claims against Detective Cornelius in his official or individual capacity. [See generally ECF No. 1-1]. Defendants noted this in their original motion to dismiss. [ECF No. 8 at 2–3]. Plaintiff subsequently amended her complaint, and her Amended Complaint alleges that her claims against Detective Cornelius are for his conduct "in both his individual and official capacities." [Am. Compl. at 18]. Defendants contest this assertion as conclusory and argues that the Amended Complaint does not allege any conduct by Detective Cornelius outside of the scope of his official duties as a police officer. [ECF No. 19 at 3]. The Court agrees with Defendants.

---

[4] Plaintiff has claimed violations of the "child endangerment doctrine," but acknowledges "that there is no explicit federal child endangerment doctrine." [ECF No. 17-1 at 6]. The Court agrees there is no cause of action under a child endangerment doctrine.

7

To determine whether an officer was acting within their official capacity, the Court must examine the "nature and circumstances of the officers conduct and the relationship of that conduct to the performance of [their] official duties" Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995). Here, Plaintiff essentially alleges that Detective Cornelius did not investigate Plaintiffs claims against the father of R.C. in a matter that was satisfactory to her, and that he testified against her as a character witness for the father in the custody dispute in the Probate Court. [Am. Compl. at 16–17]. It is widely accepted that the investigatory function is part of a police officer's duties. See Evariste v. City of Boston, No. 18-12597-FDS, 2020 WL 1332835, at *8 (D. Mass. 2020) ("It is well-settled that the 'decisions of law enforcement officers regarding whether, when, how, and whom to investigate . . . are discretionary functions'" of police officers acting in an official capacity) (quoting Sena v. Commonwealth, 629 N.E.2d 986, 990 (Mass. 1994)). Further, when a complaint fails to allege the defendant's conduct occurred outside of their official capacity, the Court may construe the defendant's actions as occurring purely within their official capacities. Isijola v. Grasso, 768 F. Supp. 3d 166, 177 (D. Mass. 2025) (citing Bache v. Town of Boxborough, No. 21-11187-FDS, 2022 U.S. Dist. LEXIS 23018, at *5 (D. Mass. Feb. 9, 2022) (finding the complaint failed to state a claim of intentional tort against a police officer in his individual capacity because it did not allege he acted outside of his official capacity while enforcing a court order)). Plaintiff's allegations fail to allege any conduct of Detective Cornelius in a personal capacity. All allegations relate to his duties in his official capacity. Accordingly, the Court **GRANTS** Defendants' motion to dismiss the claims against Detective Cornelius in his personal capacity.

### A. Plaintiff's Fourteenth Amendment and First Amendment Claims Are Barred by the Rooker-Feldman Doctrine[5]

Because Plaintiff's Fourteenth Amendment and First Amendment claims seek to challenge the custody decision and probate proceedings in state court, her claims are barred by the Rooker-Feldman doctrine. Plaintiff alleges that Defendants violated her Fourteenth Amendment right to substantive due process by removing R.C. from her custody before she had a "right to be heard." [ECF No. 17-1 at 2]. Plaintiff argues that the Defendants violated her First Amendment rights by removing R.C. from her custody as retaliation against her protected speech. [Id. at 2–3]. Specifically, Plaintiff feels the custody determination against her was retaliation for her testimony during the investigation. These claims arise from the actions of the state Probate Court, which entered a *sua sponte* order removing R.C. from Plaintiff's custody. [Am. Compl. at 20]. Plaintiff is seeking a declaratory judgement that her constitutional rights were violated in the proceedings of the Probate Court. [Id. at 24].

The Supreme Court of the United States is the only federal court with jurisdiction to review a state court judgment. See 28 U.S.C. § 1257; see also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005). Under the Rooker-Feldman doctrine, a district court cannot exercise subject matter jurisdiction over an action brought by a party who lost in state court and who is "seeking review and rejection of that judgment" in a lower federal court. Exxon Mobile, 544 U.S. at 291. Instead, "the proper forum for challenging an unlawful state court ruling is the United States Supreme Court, on appeal of the highest state court's final judgment." Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps, 471 F.3d 220, 223 (1st Cir. 2006). Litigants

---

[5] The term "Rooker-Feldman doctrine" is a shorthand reference to the Supreme Court's interpretation of 28 U.S.C. § 1257 in District of Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

cannot "avoid the impact of the Rooker-Feldman Doctrine simply by recasting [their] claims in federal court as arising under the United States Constitution" where adjudications would require reviewing the merits of the state courts decision. Sinapi v. Rhode Island Bd. of Bar Examiners, 910 F.3d 544, 549 (1st Cir. 2018) (citing McKenna v. Curtin, 869 F.3d 44, 48 (1st Cir. 2017)).

Although Plaintiff presents her claim as being a constitutional violation by Detective Cornelius and the Town of Clinton, her claim of injury "rests [] on the state court judgment itself," implicating Rooker-Feldman's statutory bar on this Court's subject matter jurisdiction. Galibois v. Fisher, 174 F. App'x 579, 580–81 (1st Cir. 2006) (citations omitted). Here, Plaintiff collaterally attacks the determination by the Probate Court that removed R.C. from Plaintiff's custody. [Am. Compl. at 22]. The custody judgment was a determination made by the Probate and Family Court, which is a state court of the Commonwealth of Massachusetts. [Id. at 22]. Plaintiff seeks a declaratory judgment that her constitutional rights were violated through the custody proceedings. [Id. at 22]. This Court cannot enter the declaratory relief Plaintiff seeks without a review of the merits of the state court decision, "thus violating the Rooker-Feldman doctrine." Mckenna, 869 F.3d at 48–49 (Rooker-Feldman barred jurisdiction where a federal court would have had to review a state court determinations "in light of existing law and the evidence on record"). Plaintiff's due process claim is rooted in the Probate proceedings, and Plaintiff – likely unintentionally, given her *pro se* status – is attempting to "recast" the issue of her custody dispute as a constitutional violation. See Sinapi, 910 F.3d at 549. Although Plaintiff does not expressly challenge the order from the Probate Court, her due process constitutional claim is "nonetheless inextricably intertwined with the [Probate] court's proceedings," and therefore barred under Rooker-Feldman. Murphy v. Barnicle, No. 97-1388, 1998 WL 1267912 at *1 (1st Cir. 1998); see Wilson v. Shumway, 264 F.3d 120, 126 (1st Cir. 2001) (dismissal affirmed based on Rooker-Feldman where Plaintiff's claims

10

did not challenge the constitutionality of state regulations but rather sought to challenge his guardianship situation, an "issue [] considered and resolved in the [state] court system").

Accordingly, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's Fourteenth Amendment due process claim and her First Amendment retaliation claim, and Defendants' motion to dismiss is **GRANTED** on those counts.

### B. Remaining Section 1983 Claim

"Section 1983," 42 U.S.C. § 1983, "is a vehicle through which individuals may sue certain persons for depriving them of federally assured rights," such as the Fourteenth Amendment's right to equal protection. Gagliardi, 513 F.3d at 306. In order to succeed on a Section 1983 claim, a plaintiff must show that defendants acted under the color of state law, and that his or her conduct deprived plaintiff of rights secured by the Constitution or by federal law. Id. (citing Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997)).

Plaintiff alleges "gender and pregnancy discrimination" during her DCF interviews, asserting that she was especially emotional during the interview process due to her being pregnant and Defendants unfairly held that against her. [Am. Compl. at 11; ECF No. 17-1 at 3]. Plaintiff is seeking both damages and injunctive and declaratory relief. [Am. Compl. at 22–23]. Defendants assert that Detective Cornelius has immunity from Plaintiff's remaining constitutional claim under the Eleventh Amendment and, without an underlying constitutional violation by a state actor, the Town of Clinton cannot be liable through a Monell claim. [ECF No. 19 at 11]. As explained below, the Court agrees with Defendants.

#### 1. Against Detective Cornelius

The Court first considers the claims against Detective Cornelius in his official capacity. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND. XI. The amendment "has been construed to bar all suits against a state for damages in the federal courts, regardless of the citizenship of the plaintiff." Cline v. Burke, 682 F. Supp. 3d 125, 131 (D. Mass. 2023) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1, 15 (1890)); see Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted). Therefore, the Eleventh Amendment also bars suits for damages against state officials acting in their official capacity. See id.

State sovereign immunity is not absolute. "States may consent to suit in federal court, and, in certain cases, Congress may abrogate the States' sovereign immunity." Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990) (citations omitted). Moreover, a plaintiff may also seek prospective relief against state officials acting in violation of federal law under the principles set forth in Ex parte Young. Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004) (citing Ex parte Young, 209 U.S. 123 (1908)). To establish the Court's subject matter jurisdiction over the claims against Detective Cornelius, Plaintiff must show that any of the three following exceptions apply: (1) that Congress has abrogated the Commonwealth's sovereign immunity, (2) that the Commonwealth waived its sovereign immunity, or (3) that she is seeking prospective relief to remedy an ongoing violation of federal law. The Court will address each of these in turn.

Considering the first two exceptions, it is well settled that "Congress has not abrogated, and Massachusetts has not waived, its Eleventh Amendment immunity for civil-rights claims

brought under 42 U.S.C. § 1983." Wilson v. Massachusetts Dep't of Child. & Fams., No. CV 24-11442-FDS, 2024 WL 3011235, at *2 (D. Mass. June 14, 2024) (citing Will, 491 U.S. at 66; Coggeshall v. Massachusetts Bd. of Registration of Psychs., 604 F.3d 658, 662 (1st Cir. 2010)). Further, because state officials acting in their official capacity are considered an extension of the state, Detective Cornelius is entitled to sovereign immunity and cannot constitute a "person" under Section 1983. See Will, 491 U.S. at 71 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Accordingly, all Plaintiff's claims against Detective Cornelius for damages are barred by the Eleventh Amendment.

The Ex Parte Young exception to immunity when a plaintiff seeks prospective injunctive relief does not salvage Plaintiff's claims. See Ex parte Young 209 U.S. at 155. "While the Eleventh Amendment prohibits a party from bringing suit against a state in federal court, it does not prohibit a party from bringing suit against a state officer in federal court for prospective declaratory or injunctive relief under federal law." Asociación De Subscripción Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1, 24 (1st Cir. 2007) (first internal citation omitted) (citing Ex parte Young, 209 U.S. at 155). Ex parte Young thus provides an exception to the Eleventh Amendment's jurisdictional bar "in cases where prospective declaratory or injunctive relief is sought under federal law.'" Mills v. Maine, 118 F.3d 37, 54 (1st Cir. 1997). Under Ex parte Young's exception, individuals can sue state officials for *prospective* injunctive relief. See Rosie D. ex rel. John D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002) (emphasis added). It does not permit "judgments against state officers declaring that they violated federal law in the past" or any other claims for "retrospective relief," including damages. P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 145-46 (1993) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)).

Plaintiff seeks injunctive relief to "compel the expungement or sealing of . . . records" and the "[p]revent[ion] of future retaliatory investigations or actions." [Am. Compl. at 22]. The relief of expungement based on the custody proceedings is injunctive and prospective; however it purely functions to remedy a past violation, which is prohibited by the Eleventh Amendment. Marino v. Gammel, 191 F. Supp. 2d 243, 254 (D. Mass. 2002) ("Injunctive relief, which is prospective in nature, is not available to remedy past violations.") (citing Edelman v. Jordan, 415 U.S. 651, 675–78 (1974)).

Plaintiff's request to prevent future retaliatory investigations or actions fails for a different reason: the risk of future harm is too speculative to establish Article III standing for injunctive relief. Article III of the United States Constitution limits federal courts' jurisdiction "to actual cases and controversies." Kerin v. Titeflex Corp., 770 F.3d 978, 981 (1st Cir. 2014). "To satisfy this constitutional requirement, 'a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability.'" Narrigan v. Goldberg, 772 F. Supp. 3d 182, 190 (D. Mass. 2025) (quoting Kerin, 770 F.3d at 981). It is well established that "past harm does not confer standing to seek forward-looking declaratory or injunctive relief unless there is ongoing injury or a sufficient threat that the injury will recur." Roe v. Healey, 78 F.4th 11, 21 (1st Cir. 2023) (citing Efreom v. McKee, 46 F.4th 9, 21–22 (1st Cir. 2022)).

Plaintiff makes no allegations that a future investigation is anything more than hypothetical or conjecture. For example, she has not alleged that a new investigation has been opened or that there have been any developments in the custody proceeding. She has only alleged a fear of possible retaliatory action, which is inadequate for standing for injunctive relief. See Connecticut v. Massachusetts, 282 U.S 660, 674 (1930) (injunctive relief denied where the injury was "merely feared" to "occur at some indefinite time in the future") (internal citations omitted); see also Los

14

Angeles v. Lyons, 461 U.S. 95, 111–12 (1983) (injunctive relief based on past police conduct denied where there was no real and immediate threat of recurring harm in the future).

As Plaintiff has failed to establish any exception to immunity that would allow her constitutional claims against Detective Cornelius to prevail, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Equal Protection claim against Detective Cornelius.

### 2. Monell Claim Against the Town

Plaintiff alleges that the Town of Clinton is subject to Monell liability for its policy or custom resulting in constitutional injury. [ECF No. 17-1 at 6-7]; see Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658 (1978). Defendants assert that Plaintiff failed to allege a practice or policy against the Town, and, therefore, her claim for Monell liability must be dismissed. [ECF. No. 19 at 11–13]. Plaintiff did not address this argument in her response to Defendants' Motion to Dismiss. [See ECF No. 20].

It is settled law that a municipality cannot be liable under Section 1983 for the actions of its employees simply by virtue of the employment relationship. Monell, 436 U.S. at 691-92. Instead, in order to raise a viable claim of municipal liability, a plaintiff must identify a municipal policy or custom that caused the plaintiff's injury. Id. at 694; Oklahoma City v. Tuttle, 471 U.S. 808, 818 (1985); Young v. City of Providence, 404 F.3d 4, 25 (1st Cir. 2005). "A Section 1983 claim based on a theory of municipal policy is only viable where 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Freeman v. Town of Hudson, 849 F. Supp. 2d 138, 149 (D. Mass. 2012) (quoting Monell, 436 U.S. at 690). A plaintiff may alternatively point to a municipality's custom or practice that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691. Regardless of whether

plaintiff's theory is grounded upon municipal policy, practice, or custom, it "must be so tied to the challenged acts that it can be said to be the moving force of the constitutional violation." Freeman, 849 F. Supp. 2d at 149 (quoting Bibbo v. Mulhern, 621 F.Supp. 1018, 1027 (D. Mass. 1985)); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."). A single decision may result in municipal liability if the decision is made by an official with final policy-making authority with respect to the subject matter in question. See Freeman, 849 F. Supp. 2d at 149.

As a threshold matter, municipal liability under Section 1983 requires an underlying constitutional violation. See Cox v. City of Boston, No. 22-11009-RGS, 2024 WL 4608587, at *5 (D. Mass. Oct. 29, 2024); Keller v. Town of Monson, No. 3:20-cv-30187-KAR, 2024 WL 1251420, at *13 (D. Mass. Mar. 22, 2024). Because, as discussed supra, Plaintiff has failed to plausibly allege any constitutional violations on the part of Detective Cornelius, her Monell claim against the Town necessarily fails. Accordingly, Defendants' motion to dismiss Plaintiff's Monell claim against the Town is **GRANTED**. However, even if Plaintiff's constitutional claims against Detective Cornelius were to survive, the Amended Complaint does not identify any specific municipal policy or custom that was the moving force behind the alleged constitutional violations. Indeed, the Amended Complaint does not identify any specific written policy, persistent practice, or decision officially adopted by the Town that led to the alleged violations. Accordingly, Plaintiff likewise fails to state a Monell claim under Rule 12(b)(6). Burns v. City of Worcester, 772 F.Supp.3d 109, 139 (D. Mass. 2025) (dismissing for failure to state a claim where Plaintiff did not identify a policy or practice in the complaint.)

## C. The Court Cannot Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

Plaintiff alleges negligence and a variety of intentional tort claims under Massachusetts law against both Detective Cornelius and the Town of Clinton; however, with Plaintiff's federal claims dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331 for her federal claims and supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367. [Am. Compl. at 3]. Plaintiff's federal claims have been dismissed, so federal question jurisdiction is no longer present. Plaintiff cannot rely on diversity jurisdiction as an alternative because all parties are citizens of Massachusetts and "[t]he statutory grant of federal jurisdiction in diversity cases… requires complete diversity between the plaintiffs and defendants in an action." Picciotto v. Continental Cas. Co., 512 F.3d 9 (1st Cir. 2008); 28 U.S.C. § 1332. Plaintiff is a resident of Spencer, Massachusetts. [Am. Compl. at 3]. Detective Cornelius – sued in his official capacity – and the Town of Clinton are citizens of Clinton, Massachusetts. See Clegg v. U.S. Treasury Dep't, 70 F.R.D. 486, 490 (D. Mass. 1976) ("the residence of a public official being sued in his official capacity is his official residence"); Ortiz Mercado v. Puerto Rico Marine Mgmt., Inc., 736 F. Supp. 1207, 1212 n.7 (D.P.R. 1990) ("actions against persons in their official capacity are based on the statutory citizenship of the entity they represent." (citation omitted)).

Under 28 U.S.C. § 1367(a), district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court usually has discretion to exercise supplemental jurisdiction over state law claims, even where it has dismissed all claims over which it had original jurisdiction; however,

17

where there is no proper basis for original federal jurisdiction in the first place, the court cannot exercise supplemental jurisdiction over remaining state law claims. Monahan v. Sabatis, No. CV 14-13863-PBS, 2015 WL 13333511, at *6 (D. Mass. Aug. 10, 2015) (quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2nd Cir. 1996)).

Here, the Court has ruled that all of Plaintiff's claims based on alleged violations of her federal rights are barred by the Rooker-Feldman doctrine or Eleventh Amendment immunity, rulings that implicate the Court's subject matter-jurisdiction. "The Rooker-Feldman doctrine is jurisdictional in nature; if a case is dismissed because the Rooker-Feldman doctrine applies, it means the court has no subject-matter jurisdiction to hear the case." Mills v. Harmon Law Offices, P.C., 344 F.3d 42, 44 n. 1 (1st Cir. 2003). Eleventh Amendment immunity defenses are treated as challenges to the Court's subject matter jurisdiction. See Mulero-Carrillo v. Román-Hernández, 790 F.3d 99, 105 (1st Cir. 2015) ("Eleventh Amendment questions are often labeled jurisdictional[.]") (quoting Parella v. Ret. Bd. of Rhode Island Employees' Ret. Sys., 173 F.3d 46, 55 (1st Cir. 1999)). Finding that it lacks original subject matter jurisdiction over this suit, this Court cannot exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

Accordingly, all of Plaintiff's remaining state law claims are **DISMISSED**.

### IV.    Plain Language Summary for Pro Se Plaintiff

Your case is being dismissed because the Court does not have subject matter jurisdiction over your claims. Subject matter jurisdiction is a court's legal authority to hear and decide a specific type of case based on the nature of the controversy. Federal courts have limited jurisdiction due to restrictions in the Constitution and under federal statutes. When a court does not have subject matter jurisdiction, it cannot make a ruling on your claims.

Your Fourteenth Amendment Due Process and First Amendment retaliation claims are barred by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine bars plaintiffs who lost in state court from using federal court to challenge the outcomes of their state court proceedings. The doctrine applies to claims in state probate court. Because your Fourteenth and First Amendment claims derive from and are intertwined with the custody proceeding in state probate court, you cannot bring these claims in this federal court. The proper place to challenge the custody outcome is in the state court system or, eventually, the United States Supreme Court. The effect of your claims being barred by the Rooker-Feldman doctrine is that this Court does not have subject matter jurisdiction over those claims.

Your Equal Protection claim alleging gender discrimination by Detective Cornelius is barred by Eleventh Amendment immunity. The Eleventh Amendment provides immunity to public officials in their official capacity when you sue for money damages. There is a small exception that would allow you to sue if you're seeking injunctive relief for ongoing or recurring harm, but you have not shown that you will truly or imminently be subject to the same type of harm again, so that exception does not apply. Detective Cornelius is immune from liability for this claim. When the Eleventh Amendment provides immunity, the Court does not have subject matter over the claim.

Your Monell claim against the town fails for two reasons. First, you have not shown a violation of your constitutional rights by Detective Cornelius because that claim is barred by immunity. Without an underlying constitutional violation, the Town cannot be liable under Monell. Second, you do not allege a policy, practice, or custom that the Town engaged in that led to your rights being violated. For the claim you brought, you must allege some kind of policy by the Town of Clinton, or the Clinton Police Department.

Finally, your state law claims must be dismissed because this Court cannot exercise supplemental jurisdiction over them. A federal court can only hear state law claims in two circumstances: when the court has "diversity" jurisdiction or when the court exercises supplemental jurisdiction. Diversity jurisdiction requires the plaintiff and the defendants to be from different states. Because every party in this case is from Massachusetts, diversity jurisdiction does not apply. In some cases, the Court can exercise supplemental jurisdiction over state law claims when those claims relate to federal claims where the court had original jurisdiction. The problem here is that the Court does not have original jurisdiction over your federal claims due to the <u>Rooker-Feldman</u> doctrine and Eleventh Amendment immunity. This means that it cannot exercise supplemental jurisdiction over the state law claims in your case.

For these reasons, all the claims in your case must be dismissed and the Court has ruled in favor of the Defendants.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 18, is **<u>GRANTED</u>** in full and this case is **<u>DISMISSED</u>**.

**SO ORDERED.**

Dated: February 27, 2026

                                             <u>/s/ Margaret R. Guzman</u>
                                             Margaret R. Guzman
                                             United States District Judge